IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BRILL, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>COUNTRYWIDE HOME LOANS, INC., a corporation,<br><br>     Defendant. | Case No.  05 C 2713<br>Judge Darrah |

## COUNTRYWIDE'S SUBMISSION CONCERNING SETTLEMENT

This Court preliminarily approved the proposed settlement between plaintiff James Brill ("Brill") and defendant Countrywide Home Loans, Inc. ("Countrywide") on February 21, 2006. Pursuant to Federal Rule of Civil Procedure 23(e), Brill has now moved for final approval of that settlement. Countrywide submits this brief to assist the Court in its consideration of Brill's motion.[1]

### I.    INTRODUCTION

Countrywide agrees with Brill that the proposed settlement is a fair and reasonable compromise of his claims. The settlement was negotiated by experienced counsel following substantial litigation, and after due consideration of the risks posed by further litigation of this

---

[1] Following preliminary approval, the settlement has been partially administered as required: notices to class members were sent and claim forms, opt-outs, and objections were received. See Plaintiff's Memorandum in Support of Final Approval of Class Action Settlement, and accompanying affidavits. The deadlines for the filing of opt-outs and objections – May 1, 2006 – have now expired. The deadline for the submission of claim forms will expire on June 27, 2006. See Order Preliminarily Approving Settlement, Conditionally Certifying Class for Settlement Purposes, and with respect to Class Notice, Settlement Hearing and Administration ("Preliminary Approval Order"), ¶¶ 8, 10, and 14-16 (February 21, 2006).

class action. The settlement offers class members who submit a valid claim form a monetary payment. And, through the settlement, class members have avoided the significant risk that they would receive no recovery after litigation of dispositive motions, trial, and possible appeals on the merits. This settlement also provides class members immediate and certain payments from Countrywide. Lastly, Countrywide provided notice of the settlement to the Attorney General of Illinois and the United States Attorney General, as required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, on March 3, 2006. Affidavit of Thomas M. Hefferon, Esq., ¶4.

## II.   STANDARDS FOR EVALUATING THE SETTLEMENT.

The standard for consideration of Brill's motion for approval is well-established. This Court's "inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996). The Court is to "consider the facts 'in the light most favorable to the settlement.'" Isby, 75 F.3d at 1199 (quoting Armstrong v. Board of School Directors, Etc., 616 F.2d 305, 315 (7th Cir. 1980)).

The Seventh Circuit has identified several factors to consider in evaluating whether a class action settlement should be approved, including:  (1) the strength of plaintiffs' case compared to the amount of defendants' settlement offer; (2) an assessment of the likely complexity, length, and expense of the litigation; (3) an evaluation of the amount of opposition to settlement among affected parties; (4) the presence of collusion in gaining a settlement; (5) the opinion of competent counsel as to the reasonableness of the settlement; and (6) the stage of the proceedings and the amount of discovery completed at the time of settlement. Isby, 75 F.3d at 1198-99; Donovan v. Estate of Fitzsimmons, 778 F.2d 298, 308 (7th Cir. 1985). As discussed below, each factor militates toward approval of the proposed settlement in this case.

### III.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

A primary reason that the settlement is fair, reasonable and adequate is that Brill faced a likelihood of not succeeding on the merits of the class claims, and of not being able to maintain class treatment of this lawsuit.  See In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 476-77 (S.D.N.Y. 1998) (risk of not succeeding on the merits of class claim is a factor weighing heavily in favor of the partial compromise of any class claim).

Countrywide raised numerous defenses to Brill's and the potential class members' claims.  Amongst these defenses are the following:

- Countrywide contested whether the facsimile at issue was "unsolicited" under the statute as to some or all class members, based on the preexisting business relationship exception defined in the applicable regulations.

- Countrywide asserted that that the TCPA is unconstitutional on its face and as applied to Countrywide in this suit in that it violates the First, Fifth, Eighth, and Tenth Amendments to the United States Constitution or is otherwise unconstitutional.

- Countrywide maintained that damages were uncertain and that the court had discretion under the statute to award fees in any amount from zero to five hundred dollars.

- Plaintiffs faced a risk that a class would not have been certified.  There is a split of authority regarding whether TCPA violations are suitable for class treatment. Compare  Kim v. Sussman, 2004 WL 3135348 (Ill.Cir. Oct. 19, 2004) (Mason, J.) with Travel 100 Group, Inc. v. Empire Cooler Serv. Inc., 2004 WL 3105679 (Ill.Cir. Oct. 19 2004) (McGann, J.).  Absent this settlement, if a class was denid, the class members would face the burden of having to obtain their own counsel and separately pursue their claims.

- Countrywide contended that each class member would have to prove that he, she, or it received the fax at issue in this case.

- Countrywide also contended that each class member would have to prove that he, she, or it personally possessed the right to bring a claim for a fax sent to a specific fax number.

- Countrywide maintained that the employee allegedly involved in the conduct at issue was acting outside his authority and, therefore, Countrywide did not have the requisite intent under the Act.

The parties further recognize that there is no controlling precedent in this Court on the defenses raised by Countrywide, increasing the risk to class members that they might not prevail on the merits.

The class also faced substantial risk of delay before any possible judgment. The parties had, prior to settlement, actively litigated this case, including taking an appeal to the Seventh Circuit Court of Appeals. Countrywide intended to continue to actively litigate the various issues and defenses. Moreover, additional appeals by one or both parties would be likely, especially in light of the lack of controlling precedent.

In short, Brill and the class faced many substantial risks. The choice to seek a class settlement, rather than continued litigation, was reasonable and should not be second guessed.

In light of this risk, the settlement value is reasonable. It properly accounts for the significant litigation risks faced by Brill and the class members, including the risk that class members could have recovered nothing or been compelled to pursue individual claims in the event of a failure to gain class certification. Further, it appropriately recognizes that the alleged violation was isolated rather than part of a pattern or practice, and that the harm to each class member was relatively minor – at most, the cost of a piece of paper, some ink, and the momentary occupation of the fax line. And, each class member gets the monetary settlement now, as opposed to months or years down the road or, perhaps, never.

Continued litigation of this matter would be complex, expensive, and lengthy. Many of the issues outlined above would remain for litigation and potentially appeal. Class action litigation is, by its very nature, expensive and time-consuming, and thus a settlement at this stage carries many valuable advantages to the class members.

Further, the significant support for the settlement and lack of opposition amongst class members strongly supports approval of this settlement. Not a single member of the settlement class has opposed or opted out of the class. This extraordinary lack of opposition to the settlement counsels strongly toward approval of the settlement.[2]

The settlement was the product of good faith negotiations between experienced counsel and is free of collusion. Experienced counsel negotiated this settlement in half a dozen negotiating sessions over several months. Counsel for the parties exchanged both oral and written offers and counter-offers during and following these negotiations. The ultimate settlement represents the negotiated compromised between the parties that resulted from these negotiations.

Finally, this settlement was reached after class counsel had sufficient opportunity to evaluate meaningfully the facts and the law, the prospect for success, and the adequacy of the settlement. Counsel for both parties have spent significant time litigating this case and developing the facts and the law such that they could reasonably evaluate the merits of the settlement.

Based on each of these factors, the settlement is fair and reasonable under the well-established standards of this circuit.

---

[2] Under the terms of the Settlement Agreement, Countrywide will process the claim forms as it receives them from Class Counsel to identify, among other things, those that meet the criteria for a Valid Claim Form, as that term is defined in paragraph 1.33 of the Settlement Agreement, and those that do not.

### III.    CONCLUSION

WHEREFORE, for all the foregoing reasons, the settlement reached by the parties represents a fair, reasonable and adequate resolution and should be approved.

        Respectfully submitted,

        **COUNTRYWIDE HOME LOANS, INC.**

        By:    /s/ Howard L. Teplinsky
            Howard L. Teplinsky, Esq. (#6197501)
            **OTTENHEIMER TEPLINSKY**
            **ROSENBLOOM, LLC**
            750 Westlake Cook Road, Suite 140
            Buffalo Grove, IL 60089
            (847) 520-9404

            Thomas M. Hefferon, Esq. (#90785220)
            **GOODWIN PROCTER LLP**
            901 New York Avenue, N.W.
            Washington, D.C. 20001
            (202) 346-4000

**DATED:**   June 21, 2006